IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| QUINN GOLDMAN #379920 | § | |
| VS. | § | CIVIL ACTION NO. 6:21cv164 |
| DIRECTOR, TDCJ-CID | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Quinn Goldman, a former inmate of the Texas Department of Criminal Justice (TDCJ) proceeding pro se, filed a petition for a writ of habeas corpus to challenge the calculation of his sentence and mandatory supervision period and paid the filing fee. The action was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

### Procedural and Factual History

Petitioner was convicted and sentenced in San Jacinto County to forty years in prison for murder on July 12, 1984, in cause number 6133. (Dkt. #1-1 at 12; Dkt. #16-3 at 3.) While he was in prison in Anderson County, he was convicted and sentenced in cause number 20,175 to 3 years for forgery on April 6, 1989, to be served consecutively to the 40-year sentence for murder. (Dkt. #1-1 at 12; Dkt. #16-3 at 3.) While he was still in prison in Anderson County, he was convicted and sentenced in cause number 25416 to another consecutive 3-year sentence on April 10, 2002, for possession of a controlled substance in a penal institution. (Dkt. #1-1 at 12; Dkt. #16-3 at 3.) The offense dates for those convictions were May 3, 1988, and October 18, 1999, respectively. (Dkt. #16-3 at 3.) Petitioner's total effective sentence, therefore—not accounting for any sentence credits—is forty-six (46) years. (*Id.* at

5.) After factoring in jail credits for each offense, his "sentence begin date" was set at March 4, 1982. (Dkt. #16-3 at 3.)

Petitioner was released on mandatory supervision on July 16, 2014. (Dkt. #16-3 at 6.) From September 2014 through October 2018, Petitioner was arrested on five separate occasions pursuant to pre-revocation arrest warrants. (*Id.* at 6–7.) He was ultimately released each time, having accrued jail credits for the following dates: 9/7/14–10/1/14; 6/11/15–9/2/15; 1/7/16–2/16/16; 12/19/16–11/29/17; and 10/29/18. (*Id.*) Petitioner was arrested again on December 10, 2018, and his mandatory supervision was revoked on January 25, 2019. (*Id.* at 7.) He was transferred back into TDCJ custody on February 14, 2019. (*Id.*)

After his return to TDCJ custody, Petitioner submitted several Time Dispute Resolution Forms about the calculation of his remaining sentence. (*Id.* at 8–9.) He was originally misinformed that his new "max date," or total sentence discharge date, was March 24, 2031, but he was later informed that his max date was actually one day later—March 25, 2031. (*Id.* at 9.) In November 2020, he was advised as follows in response to a Time Dispute Resolution Form:

> Your correspondence/time dispute was forwarded to me for review[.] Current records indicate Cause #25416 from Anderson Co sentence date 4/10/2002 a 3yr. conviction is ordered to run consecutively with Cause #20,175 from Anderson sentence date 4/6/1989 also a 3yr conviction, and Cause #20,175 is to run consecutively with Cause #6133 from San Jacinto Co. sentence date 7/12/1984 a 40 yr. conviction. Over all MAX Date 3/25/2031.

(*Id.*) He was advised similarly in July 2021:

> Your disch date was 03-03-28, but you are not eligible for your street time due to having an offense under Gov. Code 508.149. You were charged 3 years and 21 days out of custody. Your new max date is 03-25-2031.

(*Id.* at 9.) In addition to that full discharge date, TDCJ calculated that, as of July 26, 2021, Petitioner would again be eligible for release on mandatory supervision on December 11, 2022. (*Id.* at 8.) That mandatory supervision date would be subject to fluctuations based on Petitioner's accumulation of

sentence credits. (*Id.*)

Petitioner submitted two applications for a state writ of habeas corpus challenging the calculation of his sentence on July 16, 2019 (Dkt. #17-9 at 4–22; Dkt. #17-15 at 5–35), which the Texas Court of Criminal Appeals denied without written order on March 10, 2021. (Dkt. #17-1; Dkt. #17-11.) Petitioner filed the instant federal petition on April 26, 2021. (Dkt. #1.) Respondent acknowledges that it is timely and is not a second or successive petition. (Dkt. #16 at 5.)

In addition to his original petition, Petitioner has filed four separate supplements and a reply. (Dkt. ##9, 15, 19, 20, 24.) Respondent filed an answer along with relevant portions of the state record. (Dkt. ##16, 17.) This case is fully briefed and ripe for review.

## Claims for Relief

Petitioner essentially restates the same claim in several ways in his original petition, but it boils down to a claim that his total effective sentence has been miscalculated to his detriment, causing him to serve more time than he should:

1. "Sentence Completed" - Petitioner argues that his 3-year sentence for possession of controlled substance in prison in cause number 25416 was fully served by July 16, 2014, and should no longer be counted as part of his sentence. (Dkt. #1 at 6.)
2. "Mandatory supervision dispute" – Petitioner claims that his release on mandatory supervision from his murder sentence was overdue by more than six months at the time of filing his federal habeas petition, when a TDCJ record showed he "had accumlated [sic] (40) yrs (06) mos (14) days." (*Id.*)
3. "Time Calculation Dispute" – Petitioner complains that TDCJ still lists his sentence as forty-six years, when he served both the three-year sentences prior to his release on mandatory supervision and was only "violated" in the forty year sentence. (*Id.* at 7.)
4. "Re-stacking of Sentence Dispute" – Petitioner reiterates that both three-year sentences were completed before his release on mandatory supervision but are still erroneously reflected as part of his sentence. (*Id.*)

Petitioner asks that both the three-year sentences "be removed from [his] sentence of record" and that his remaining forty-year sentence be calculated to have an end date of April 20, 2024. (*Id.*)

Standard of Review

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). In the course of reviewing state proceedings, a federal court does "not sit as a super state supreme court to review error under state law." *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007) (citations omitted); *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983).

Review of the petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under AEDPA, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas corpus relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "By its terms § 2254 bars re-litigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). AEDPA imposes a "highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation and internal quotation marks omitted).

With respect to the first provision, a "state court decision is 'contrary to' clearly established

federal law if (1) the state court 'applies a rule that contradicts the governing law' announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts." *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (en banc) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003)). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). As such, "evidence later introduced in federal court is irrelevant." *Id.* at 184. "The same rule necessarily applies to a federal court's review of purely factual determinations under § 2254(d)(2), as all nine Justices acknowledged." *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011).

For the purposes of section 2254(d)(2), a Texas court's factual findings are presumed to be sound unless a petitioner rebuts the "presumption of correctness by clear and convincing evidence." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (citing section 2254(e)(1)). The "standard is demanding but not insatiable; . . . [d]eference does not by definition preclude relief." *Id.* (citation and internal quotation marks omitted). The Supreme Court has held that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (citation omitted). The Supreme Court has also explained that the provisions of AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Federal habeas corpus relief is not available just because a state court decision may have been incorrect; instead, a petitioner must show that a state court decision was unreasonable. *Id.* at 694.

State prisoners filing petitions for a writ of habeas corpus are required to exhaust their state remedies before proceeding to federal court unless "there is an absence of available State corrective

5

process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1) (emphasis added). To satisfy this exhaustion requirement, a state prisoner must "fairly present" all of his claims to the state court. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). In Texas, all claims must be presented to and ruled upon the merits by the Texas Court of Criminal Appeals. *See Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985).

Claims that are not properly exhausted must be dismissed as procedurally defaulted unless the petitioner demonstrates cause and prejudice or that a fundamental miscarriage of justice would result from a court's refusal to consider a claim. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *see also Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995). The Supreme Court explained this procedural default doctrine as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750. A habeas petitioner "meets the technical requirements for exhaustion" when state remedies are no longer available to him, but the procedural default doctrine exists to prevent inmates from effectively avoiding the exhaustion requirement by default. *Id.* at 732. Thus, defaulted claims in a mixed habeas petition are dismissed as procedurally barred. *See Fearance*, 56 F.3d at 642 ("Accordingly, this court is barred from reviewing the merits of Fearance's forced medication claims: The adequate and independent state ground doctrine 'bar[s] federal habeas when a state court decide[s] to address a prisoner's federal claims because the prisoner had failed to meet a state requirement.'") (quoting *Coleman*, 501 U.S. at 729–30); *see also Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001) (same).

Discussion and Analysis

A.  Original Petition

This case turns largely on Texas law governing release from a criminal sentence on mandatory supervision and how it applies in the context of consecutive sentences. Of course, consecutive simply means that the sentences are served successively, "following one after the other in order," rather than being served concurrently, or at the same time. *Consecutive*, Merriam-Webster.com Dictionary, available at https://www.merriam-webster.com/dictionary/consecutive (last visited Jan. 23, 2023). Accordingly, when Petitioner had two consecutive three-year sentences added to his original forty-year sentence, his total effective sentence became forty-six years. With a beginning date of March 4, 1982, that means that Petitioner's prison sentence would not expire until March 4, 2028, in the absence of any other factors affecting it.

Texas's mandatory supervision scheme complicates that calculation. Texas law at the time Petitioner committed the murder that earned him his original forty-year sentence provided that "[a] prisoner who is not on parole, except under sentence of death, shall be released to mandatory supervision by order of the Board when the calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced." Tex. Crim. Proc. Art. 42.12 § 15(c) (1977). Mandatory supervision is "the release of an eligible prisoner sentenced to the institutional division so that the prisoner may serve the remainder of his sentence not on parole, but under the supervision and control of the pardons and paroles division." *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). The Fifth Circuit has held that this law created "a constitutional expectancy of early release" that is protected by the Due Process Clause. *Malchi v. Thaler*, 211 F.3d 953, 957–58 (5th Cir. 2000). Accordingly, had Petitioner not committed his subsequent crimes in prison, the Board would have been required to order his release when his time served plus his sentence credits earned equaled forty years.

But before that expected release date came, several things happened. First, the Texas legislature began a series of amendments to its mandatory supervision scheme in 1987 in ways that limited the categories of inmates who were eligible for release on mandatory supervision. *See Ex parte Schroeter*, 958 S.W.2d 811, 813 (Tex. Crim. App. 1997) (observing that the legislature promulgated a "list of ineligible offenses when it created the exclusions from mandatory supervision in 1987"). And second, of course, Petitioner committed two more crimes—forgery and possession of controlled substances in prison—and was sentenced to three more years in prison for each of them, with all sentences to run consecutively. By October 18, 1999, when Petitioner committed the crime of possession of a controlled substance in a penal institution, a statutory amendment made him ineligible for mandatory supervision on his three-year consecutive sentence for possession because of his prior conviction for murder (even though he remained eligible for mandatory supervision for the murder charge itself). Tex. Gov't Code Ann. § 508.149(a)(2) (1999).

Another district court sitting in Texas has explained how changing law affected consecutive sentences imposed before and after some of the relevant amendments to Texas law since Petitioner's first conviction:

> Prior to September 1, 1987, Texas law provided that consecutive sentences were aggregated and treated as a single sentence equal to the sum of the consecutive sentences for determining an eligibility date for release on parole and mandatory supervision and a final discharge date. Tex. Rev. Civ. Stat. art. 6181-1 § 1(4) (1986). After an amendment to the law became effective September 1, 1987, sentences were no longer stacked; instead, an inmate's consecutive sentences were treated individually, with the second sentence commencing only when the first sentence ceased to operate, i.e., when it is served out in full day-for-day (actual calendar time) or on the date a parole panel designates as the date an inmate would have been released to parole had he been sentenced to serve a single sentence. Tex. Code of Crim. Proc. art. 42.18 § 8(d) (1992). After September 1, 1987, parole eligibility was calculated separately for each sentence, but the inmate serving consecutive sentences was not eligible for mandatory supervision on any but the last of his sentences. Therefore, mandatory supervision eligibility was calculated only for the final sentence. *See Ex parte Forward*, 258 S.W.3d 151 (2008); *Salazar v. Director, TDCJ-CID*, 2018 WL 3826792 (E.D. Tex. June 13, 2018). The change in the law applied only to a prisoner sentenced to consecutive sentences if each

8

> sentence was for an offense committed after the September 1, 1987 effective date. **If any sentence was for an offense committed before September 1, 1987, the prisoner's eligibility for parole was covered by the law in effect when that offense was committed.** Petitioner's first offense (the 1986 burglary of a habitation) took place prior to September 1, 1987; therefore, his consecutive sentences were added together and treated as one sentence.

*Williams v. Davis*, No. 2:17-CV-83-Z, 2020 WL 4614675, at *2 (N.D. Tex. July 16, 2020), *report and recommendation adopted*, No. 2:17-CV-83-Z, 2020 WL 4596956 (N.D. Tex. Aug. 11, 2020) (emphasis added).

Like the petitioner in *Williams*, Petitioner's first offense (murder) took place before 1987, so his consecutive sentences were "added together (cumulated) and treated as one unit (cumulative sentence) for the purpose of determining parole eligibility and the discharge date." (Dkt. #16-3 at 5.) But Petitioner's eligibility for release on mandatory supervision for only two of his three consecutive sentences raised the question of how to calculate his mandatory supervision release date. The Texas Court of Criminal Appeals has answered that question: "Under this scheme, TDCJ would first calculate a release date for mandatory supervision for all the mandatory-supervision-eligible sentences as a unit, and then it would add the length of any mandatory-supervision-ineligible sentences to arrive at a final mandatory supervision release date." *Ex parte Forward*, 258 S.W.3d 151, 155 (Tex. Crim. App. 2008). That is what TDCJ did in this case. First, it calculated Petitioner's mandatory supervision date on his eligible sentences to be July 16, 2011. (Dkt. #16-3 at 5–6.) Then it added three years to that date to account for his ineligible sentence, resulting in a mandatory supervision release date of July 16, 2014. (*Id.* at 6.) And Petitioner was, in fact, released to mandatory supervision on that date. (*Id.*)

Petitioner's 2014 release did not, of course, mean that he had fully discharged his sentences, which totaled forty-six years and had only begun to run on March 4, 1982. When his mandatory supervision was revoked in 2019, Plaintiff was still subject to a forty-year sentence for murder, so he was not eligible under Texas law for any sentence credit for the time he spent free on mandatory

supervision, which totaled three years and twenty-one days[1] after accounting for the number of days he accrued jail credit after his multiple arrests, and he lost his previously accrued good time credits. (Dkt. #16-3 at 7–8); Tex. Gov't Code Ann. §§ 508.149(a)(2), 508.283(b), 498.003(b). TDCJ performed a new calculation of Petitioner's time served compared to his total sentence and determined that the new discharge date on his effective forty-six year sentence is March 25, 2031[2]. (Dkt. #16-3 at 8.) It also calculated that his new mandatory supervision release date was December 11, 2022, which was subject to change depending on Petitioner's accrual of good time credits.[3] (*Id.*)

Petitioner appears to be confused about several aspects of his current sentence calculation. First, he seems to believe that his three-year sentence for possession of a controlled substance in prison has already been served and that he is somehow being required to serve the same three years again. (Dkt. #1 at 6, 11.) That belief is incorrect. Petitioner was required to serve an extra three years before his mandatory supervision release because of his ineligible sentence for possession. As the Court explained above, for the purpose of his sentence expiration date, all of Petitioner's sentences are added together,

---

[1] The affidavit of TDCJ's Classification and Records Program Supervisor states that the total "street time" assessed against Petitioner was 3 years and 21 days. (Dkt. #16-3 at 7.) The affiant acknowledges that at one point Petitioner was incorrectly advised that the assessment was 3 years and 19 days. (*Id.* at 9.) The Court does not construe Petitioner's claims to hinge on this two-day difference.

[2] Adding the time Petitioner was free on mandatory supervision—3 years and 21 days—to his original discharge date of March 3, 2028, results in a new discharge date in March of 2031. The same result can be reached in more complicated fashion by considering that Petitioner's forty-six year sentence equates to 16,790 days. From March 4, 1982, to his mandatory supervision release on July 16, 2014, Petitioner served 11,823 days. Thus there were almost 5,000 days (more than 4 and a half years) remaining of his total sentence. After his release on mandatory supervision, he served almost 500 days in jail following his several arrests. That left almost 4,500 days (over 12 years) remaining to serve upon his final return to custody on December 10, 2018. This calculation also results in a new discharge date in March of 2031.

[3] Based on notices of change of address Petitioner filed that month, the Court surmises that he was, in fact, released again on mandatory supervision in December 2022. (Dkt. ##23, 24.) Because he remains subject to supervision and potential revocation, "restraints not shared by the public generally," he is still considered to be in custody for the purposes of federal habeas review under AEDPA. *Hensley v. Mun. Ct.*, 411 U.S. 345, 351 (1973) (finding that petitioner on conditional release was "in custody" for the purpose of federal habeas corpus review).

and all of his time served, including those three years, counts toward that single total. As Respondent explains, "Goldman's MS-ineligible sentence moved his MS release date, but his final discharge date is determined by his three sentences operating as one 46-year sentence." (Dkt. #16 at 13.)

Petitioner's next claim is a variation on the same theme: he says that a TDCJ time slip showed on January 6, 2021, that he had accumulated forty years, six months, and fourteen days of service plus credit, so he should have been released six months and fourteen days earlier. (Dkt. #1 at 6.) But Petitioner's total sentence is forty-six years, not forty years. He cannot simply disregard his three-year sentences even if he considers himself to have already served them.

Next, Petitioner relies on a Parole Division Violation Report that lists the only "present offense" as Petitioner's original murder conviction with a forty-year sentence. (Dkt. #1 at 7; Dkt. #1-1 at 4.) From this he concludes that he "was not sent back to prison with a (46) year conviction," but rather "[t]he parole division violated his m/s" only on the forty-year sentence for murder. (Dkt. #1-1 at 13.) But that same document indicated a "maximum expiration date" in March 2028. (Dkt. #1-1 at 4.) And Petitioner was well aware that his two three-year sentences were to run consecutively to his original forty-year sentence and each other, as evidenced by the criminal judgments attached to his petition. (Dkt. #1-1 at 7–11.) Neither his violation report nor any other administrative document could have the effect of vacating those sentences, and Petitioner's total sentence remains forty-six years.

Finally, Petitioner asserts a "re-stacking of sentence dispute" in which he again suggests that his two three-year sentences should no longer be included in his total sentence because they were served before his release on mandatory supervision. (Dkt. #1 at 7.) But again, regardless of the order in which Petitioner or anyone else deems the sentences served, the total sentence remains forty-six years. Petitioner's sentence does not expire until he has actually served forty-six years, and he is not eligible for release on mandatory supervision until his time served plus sentence credits accrued equals

11

forty-six years.

Essentially, Petitioner wants the Court to conclude that six years of his imprisonment before his mandatory supervision release constituted full service of his two three-year sentences, so those sentences should no longer be considered for any purpose, but to also count all six of those years against his original forty-year sentence. In addition to being contrary to Texas law as explained by *Ex Parte Forward*, Petitioner's manipulation of his sentence would be contrary to the very meaning of consecutive sentences.

As is inherent in Petitioner's request to construe his forty-year sentence for murder (which he believes to be his only operative sentence) to run straight through from April 20, 1984 to April 20, 2024 (Dkt. #1 at 7), he also wants to receive credit on his sentence for the time he spent free on mandatory supervision.[4] But, as TDCJ has repeatedly informed him, he is not eligible under Texas law for such credit. As explained above, at the time of Petitioner's offense of possession of a controlled substance in a penal institution (October 18, 1999), Texas law made him ineligible for release on mandatory supervision from that sentence because of his previous murder conviction. Texas Gov't Code Ann. § 508.149(a)(2). And because Section 508.149(a) applied to him, another statute also barred him from receiving any sentence credit for time actually spent on supervised release. At the time

---

[4] Petitioner presents this claim for "street time" more explicitly in his reply and his first supplement. (Dkt. #9 at 3, 6; Dkt. #19-1 at 1.) Respondent asserts that this claim was not raised in state court and is procedurally defaulted. (Dkt. #16 at 8.) But the Court agrees with Petitioner that it is simply different verbiage for one of the basic claims he has made throughout, i.e., that he is entitled to have ALL of his time since his convictions count toward service of his sentence. (Dkt. #19-2 at 1.) That issue was adequately raised in state court, and the TDCJ affidavit filed in state court directly addressed the issue of "street time." (Dkt. #17-7 at 10; Dkt. #17-15 at 27.) Accordingly, the Court understands the state court to have rejected this claim on the merits and treats it as exhausted for the purpose of federal habeas review.

Petitioner's mandatory supervision was revoked,[5] that statute provided:

> If the parole, mandatory supervision, or conditional pardon of a person described by Section 508.149(a) is revoked, the person may be required to serve the remaining portion of the sentence on which the person was released. **The remaining portion is computed without credit for the time from the date of the person's release to the date of revocation**.

Tex. Gov't Code Ann. § 508.283(b) (2003) (emphasis added). Accordingly, Respondent is correct that Petitioner is not entitled to credit for the time he spent free on mandatory supervision. (Dkt. #16 at 13.)

Nothing in Petitioner's reply alters the conclusions above with regard to the four claims raised in his original habeas petition. The reply consists mostly of questions, each of which has been answered above, including why his final sentence was not eligible for mandatory supervision, why his "street time" during mandatory supervision does not count toward service of his sentence, etc. (Dkt. ##19, 19-1.) The Texas Court of Criminal Appeals' rejection of Petitioner's claims was reasonable. Accordingly, Petitioner is not entitled to federal habeas relief. 28 U.S.C. § 2254(d).

B. Petitioner's Supplements

In his first supplement, Petitioner adds a claim that he has been wrongfully denied work credits he should have received toward his last two sentences. (Dkt. #9.) As Respondent points out, Petitioner did not include this claim in either of the habeas petitions he filed in state court. (Dkt. #16 at 8; Dkt. #17-9; Dkt. #17-15.) If Petitioner tried to raise this claim in state court now, the state courts would reject the claim as abuse of the writ. Tex. Code Crim. Proc. Art. 11.04 § 4; *Ex parte Whiteside*, 12

---

[5] "Eligibility for mandatory supervision is determined by the law in effect on the date that the inmate committed the offense. But eligibility under § 508.283(c) for credit for time spent on early release is determined by the law in effect on the date that the releasee's parole or mandatory supervision was revoked." *Ex parte Hernandez*, 275 S.W.3d 895, 897 (Tex. Crim. App. 2009). In this case, the distinction is not determinative, because the version of Section 508.283 in place at the time Petitioner committed the offense that made him ineligible for mandatory supervision flatly denied "street time" to anyone whose release was revoked: "If a person's parole, mandatory supervision, or conditional pardon is revoked, the person may be required to serve the remaining portion of the sentence on which the person was released. The remaining portion is computed without credit for the time from the date of the person's release to the date of revocation." Tex. Gov't Code Ann. § 508.283 (Sept. 1, 1999).

S.W.3d 819, 821 (Tex. Crim. App. 2000) (article 11.07, section 4 of the Texas Code of Criminal Procedure applies to all subsequent applications); *Ex parte Barber*, 879 S.W.2d 889, 891 n.1 (Tex. Crim. App. 1994). Petitioner does not offer any cause or prejudice to excuse his failure to properly exhaust this claim in state court. Accordingly, the claim is procedurally defaulted and not subject to federal habeas review for the reasons explained above. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *see also Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995). The remainder of Petitioner's first supplement (Dkt. #9) simply rehashes claims already rejected above.

In his second supplement, Petitioner reiterates his claim that he is entitled to credit toward his sentence for the time he spent free on mandatory supervision, i.e. "street time." (Dkt. #15.) In addition to raising legal issues about eligibility for "street time" that are already addressed above, Petitioner argues that he was never actually out of TDCJ custody while he was on mandatory supervision, because he remained in legal custody and wore an ankle monitor. (*Id.* at 3.) But that does not change the applicable law, Section 508.283, which expressly states that Petitioner does not get credit for the time he was on mandatory supervision.

Petitioner's third and fourth supplements rehash his insistence that he is currently only serving a forty-year sentence that began running April 20, 1984, and will expire April 20, 2024, and asserts that a "parole man" to whom he spoke shares his view. (Dkt. ##20, 24.) The Court has already rejected that argument above.

## Conclusion

For the reasons explained above, Petitioner's claim for work credits is procedurally defaulted, and the state court's rejection of his other claims on the merits was reasonable. Nothing in the record before the Court indicates that Petitioner has been denied due process in the calculation of his sentence. Accordingly, he is not entitled to habeas relief on any claim raised. 28 U.S.C. §§ 2254(b)(1), 2254(d).

Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A district court may deny a certificate of appealability *sua sponte* because the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

To obtain a certificate of appealability, the petitioner must make a substantial showing that the petitioner has been denied a federal right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). To do this, he must demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. *James v. Cain*, 50 F.3d 1327, 1330 (5th Cir. 1995).

When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a certificate of appealability should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the prisoner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists reviewing this case could not disagree that Petitioner's claim for work credits is procedurally defaulted or that the Texas courts reasonably rejected his remaining claims. Accordingly, the Court should deny a certificate of appealability.

RECOMMENDATION

The undersigned accordingly recommends that Petitioner's petition for writ of habeas corpus be denied, this action be dismissed with prejudice, and that a COA be denied *sua sponte*.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

**So ORDERED and SIGNED this 26th day of January, 2023.**

*[Signature]*
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE